307 So.2d 604 (1975)
STATE of Louisiana
v.
Leroy Henry JACKSON.
No. 55300.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*605 Allen J. Bergeron, Jr., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Bryan B. Bush, Asst. Dist. Atty., for plaintiff-appellee.
*606 DIXON, Justice.
In June of 1973 the defendant was charged by bill of information with armed robbery at Ragusa's Grocery Store in East Baton Rouge Parish. The robbery occurred on April 16, 1973. The jury found the defendant guilty and he was subsequently sentenced to twenty-five years at hard labor. From this judgment and sentence the defendant appeals, perfecting fourteen bills of exceptions.

Bill of Exceptions Nos. 9, 10 and 11
These bills were reserved during the cross-examination of a defense witness. The witness, Lloyd Wilson, admitted on direct examination that he had participated in the crime for which Jackson was charged. Wilson testified that Jackson had not participated in the robbery. He also admitted that he had pleaded guilty to another armed robbery. During the course of the armed robbery of which Wilson had been convicted the victim was raped. On cross-examination the district attorney repeatedly asked Wilson about the rape. Each time the witness was asked about the rape (for which he had not been tried), the defense attorney objected, arguing that the only question which could be used to impeach the witness was whether or not he had been convicted of a crime. This objection was made under R.S. 15:495. The trial judge, after argument, sustained the objection to this statement when it was first raised. The district attorney returned to the question several times and each time the trial judge sustained the objection. However, the district attorney did succeed in introducing some testimony of details of the armed robbery for which the witness had pleaded guilty. First, he asked the witness about the other defendants in the armed robbery-rape. The witness testified that they were both in jail and that they had pleaded guilty to armed robbery and rape. This testimony was not objected to by the defense and is therefore not attacked on appeal.
The district attorney also asked Wilson whether he had given a confession concerning the armed robbery-rape. The defense objection was overruled and the witness answered that he had admitted the armed robbery and rape to the police. The witness had not been convicted of the crime of rape and the problem arises whether it is prohibited by R.S. 15:491 (particular acts not admissible when general credibility is attacked) or whether it is admissible to show the nature of the offense for which the witness had been previously convicted. In this case, the testimony indicates that the rape occurred as part of the crime of armed robbery. Numerous cases in our jurisprudence hold that evidence of other crimes is admissible during the trial of a case when that other crime was part of the res gestae of the case on trial. State v. Robinson, 302 So.2d 270 (La.1974); State v. Williams, 263 La. 755, 269 So.2d 232 (1972). In this case the rape was part of the transaction in which the armed robbery took place. The question presented, therefore, is whether the witness may be examined about the details of the crime which is being used to impeach his credibility.
This court has previously held that evidence is not admissible to show the details of a crime, the conviction of which is being used to impeach the credibility of a witness. State v. Danna, 170 La. 775, 129 So. 154 (1930); State v. Perkins, 248 La. 293, 178 So.2d 255 (1965); State v. Brent, 248 La. 1072, 184 So.2d 14 (1966); see State v. Kelly, 271 So.2d 870 (La.1973). This is in accord with the large majority of jurisdictions. See: Volume 1 Underhill's Criminal Evidence, § 245, n. 22. The federal courts seem to have followed the rule from McCormick:
"How far may the cross-examiner go in his inquiries about convictions? He may ask about the name of the crime committed, i. e. murder or embezzlement, and the punishment awarded. It will certainly add to the pungency of the impeachment *607 where the crime was an aggravated one if he may ask about the circumstances, for example, whether the murder victim was a baby, the niece of the witness. And it has been suggested by a few courts that since proof by record is allowable, and the record would show some of these circumstances, the cross-examination should at least be permitted to touch all the facts that the record would. On the whole, however, the more reasonable practice, minimizing prejudice and distraction from the issues, is the generally prevailing one that beyond the name of the crime, the time and place of conviction, and the punishment; further details such as the name of the victim and the aggravating circumstances may not be inquired into." (McCormick on Evidence, 2d ed., p. 88 (1972)).
See: Beaudine v. United States, 368 F. 2d 417 (5th Cir. 1966); U. S. v. Mitchell, 427 F.2d 644 (3rd Cir. 1970), where admission of evidence of details was held to be error, but not reversible error in the case before the court.
The rule that the details of the crime are inadmissible has developed from a misapplication of the rules concerning all past misconduct evidence. First, evidence of past misconduct of the witness is not inadmissible because it is irrelevant. Theoretically all evidence concerning the past acts of a witness may be relevant to the determination of his credibility by the jury. Evidence of prior misconduct of the witness is inadmissible because of policy considerations which are based on problems arising from presentation of the evidence rather than the nature of the evidence itself. Wigmore reduces these policy considerations to two main categories:
"(a) The reason of confusion of issues (§§ 1863, 1904 infra). This involves several considerations usually operating together and attending the production of additional testimony upon minor points. There are two chief considerations; first, each additional witness introduces the entire group of questions as to his qualifications and his impeachment, and the amount of new evidence thus made possible may increase in far greater than geometrical proportion to the number of new witnesses, so that the trial may become in length extremely protracted, and with relatively little profit; secondly, this additional mass of testimony on minor points tends to overwhelm the material issues of the case and to confuse the tribunal in its efforts to disentangle the truth upon those material points.
"(b) The reason of unfair surprise (§§ 1845, 1849 infra). Surprise, in itself, is ordinarily no ground of objection to any kind of evidence. But the novelty of evidence may become unfair when there is no possible way of anticipating the nature of false evidence which could be refuted. This unfairness here lies in the fact that the opponent who desired by other witnesses to impeach by particular instances of misconduct might allege them as of any time and place that he pleased, and that, in spite of the utter falsity of the allegations, it would be practically impossible for the witness to have ready at the trial competent persons who would demonstrate the falsity of allegations that might range over the whole scope of his life. For example, the witness may have lived in three towns, Millville, Riverside, and Sierra Madre; in order to be perfectly prepared it would be necessary for him to come to trial with persons who had known him at every stage of his life in all three towns and could instantly prove the falsity of charges of any kind of misconduct, which might be alleged as of any time and placeconduct, events, times, and places, entirely impossible to divine beforehand, because known only to the opposing false witness himself; indeed, this body of witnesses would perhaps have to come, in strictness, from every known habitable part of the globe, because the opponent might falsely place the misconduct in Kamchatka, and it *608 would then be desirable to show that the witness had never been in Kamchatka. The possibility of unfair surprise makes it necessary to concede the propriety of the rule based upon it." (3 Wigmore, Evidence, § 979, p. 826 (Chadbourn rev. 1970).)
Wigmore concludes that if these policy considerations are not applicable in a given case the rule should be disregarded and the evidence admitted, unless it is irrelevant. This is the true basis for the statutory rule allowing the introduction of proof of prior convictions. 3A Wigmore, § 980, p. 828. Evidence of prior convictions of the witness is admissible because it does not present problems of confusion. The record proves the conviction; unfair surprise is not a problem.
The rule originally followed by numerous jurisdictions was that the conviction of the offense was proved by introducing the record of the case. The jury learned those details of the crime which appeared in the indictment or bill of particulars and the verdict of the jury. These jurisdictions hold that questions to a witness about information which is found in the record are not objectionable. State v. Bentley, 46 N. J.Super. 193, 134 A.2d 445 (1957); State v. Butler, 9 Wash.App. 347, 513 P.2d 67 (1973). See State v. Vastine, 172 La. 137, 133 So. 389 (1931).
The rule that details of the crime are not admissible has not been uniformly applied. In U. S. v. Bray, 445 F.2d 178 (5th Cir. 1971), the court held that the witness is allowed to testify to any exculpatory facts about the conviction. The witness can thus soften the impeaching effect of the disclosure.
Several courts have held that if the witness attempts to reduce the effect of the admission of conviction by testifying to exculpatory facts or circumstances, the other side is allowed to introduce details of the offense for the purpose of counteracting this testimony. State v. Howard, 230 La. 327, 88 So.2d 387 (1956); State v. Wilson, 26 Wash.2d 468, 174 P.2d 533 (1946); State v. Rush, 248 Or. 568, 436 P.2d 266 (1968). Evidence of the real nature of the offense is relevant as to credibility, whether the evidence tends to minimize or increase the seriousness of the offense.
Is the evidence relevant? This court has consistently held that evidence of any conviction (including misdemeanors) is admissible to impeach the credibility of the witness. State v. Odom, 273 So.2d 261 (La.1973). It is not the conviction which impeaches, but the unlawful act. The conviction simplifies proof.
Therefore, there is no error in the cross-examination of a witness which seeks details of an offense for which the witness was convicted, for the purpose of establishing the true nature of the offense.
There is no merit in Bills Nos. 9, 10 and 11.

Bill of Exceptions Nos. 12, 13 and 14
These bills were reserved during the direct examination of Detective Alford. The State called Detective Alford as a rebuttal witness. Defendant argues that the trial judge improperly allowed Alford to testify concerning matters which had not been presented by the defense and were therefore not properly the subject of rebuttal.
The scope of rebuttal evidence is limited by the general rules on the proper order of receiving evidence at trial. C.Cr. P. 765(5). State v. Diggs, 261 La. 76, 259 So.2d 18 (1972). In this case, Detective Alford was allowed to testify that he had participated in the investigation of this case; he was present when the confession of the defendant was made; the other participants in the crime had also confessed; and no promises or threats had been made before the defendant gave a statement. The defense counsel objected to the testimony concerning the statements of the other participants claiming that no defense witness had denied that these statements *609 existed. Lloyd Wilson, however, had testified that these statements were not true, and that they were made on the basis of a promise of release by the officer. Although the officer's testimony was not to this specific issue, it did tend to rebut the testimony of Wilson and establish in the jurors' minds the fact that the witness had admitted that Jackson was involved in the crime. Under the facts of this case there was no abuse of the trial court's discretion in admitting this testimony as rebuttal evidence.
There is no merit in these bills.

Bill of Exceptions Nos. 6 and 7
These bills were reserved when the oral confession of the defendant was introduced into evidence. The defendant argues that oral confessions are never admissible because they consist only of the officers' recollection of what the defendant admitted. The argument is without merit. Oral confessions are admissible even though they are not reduced to writing and not repeated verbatim. State v. Bickham, 239 La. 1094, 121 So.2d 207 (1960).
Defendant also contends that the evidence shows that the confession was involuntary because the officers promised to release the defendant if he confessed. The testimony of the officer who took the statement was to the effect that no such promise was made. This was the only evidence concerning this issue at the hearing on the motion to suppress. The evidence shows that the confession was voluntary and therefore it was properly admitted into evidence.
There is no merit in these bills.
Bills of Exceptions Nos. 1, 2, 3, 4, 5 and 8
These exceptions, although different in nature, are all presented in one argument. Defendant admits that these exceptions do not require reversal when considered individually. Defendant, however, contends that these exceptions, when considered together, show that the defendant was denied due process of law. Although this court has reversed a conviction on such an argument in the past, State v. Dickerson, 282 So.2d 456 (La.1973), this is not such a case.
The objections were made to the decision at the preliminary hearing that probable cause for the arrest existed (Bill No. 1); the district attorney's leading the witness during the motion to suppress (Bill No. 2); allowing the witness to testify to conclusions during the motion to suppress (Bills Nos. 3, 4 and 5). No basis for Bill No. 8 can be found in the transcript and it is not explained in argument. There was no error made by the trial judge in his rulings on these objections. This argument is without merit.
There is no merit in these bills.
Accordingly, the conviction and sentence of the defendant are affirmed.
SANDERS, C. J., concurs in the decree.
BARHAM, J., dissents with reasons.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents and assigns reasons.
TATE, Justice (dissenting).
The impeachment of the witness Wilson by asking him about the rape charge (of which he had not been convicted) is in the teeth of the statutory prohibition added to La.R.S. 15:495 by the 1952 amendment. The trial judge properly sustained defense objections to such testimony on such ground, but the prosecution, by repeatedly injecting the issue, finally got before the jury details of the crime.
The evidence of the rape offense was completely irrelevant for any admissible purpose. It was obviously prejudicial, as *610 tending to associate the witness's rape-robbery with the present totally unrelated robbery for which alone he is charged. The defendant's motion for a mistrial should have been granted because of this prosecutorial excess.
In addition, for the reasons noted in my dissent this day in State v. Banks, La., 307 So.2d 594, I would find merit in the bills attacking the admission, as rebuttal evidence, of the testimony of Detective Alford. By placing this cumulative testimony in rebuttal instead of in chief, the State deprived the accused of an opportunity to defend against it. See State v. Davis, 246 La. 383, 164 So.2d 589 (1964).
I therefore respectfully dissent.
BARHAM, Justice (dissenting).
La.R.S. 15:495 provides that convictions only, and not arrests or indictments, can be used for impeachment purposes. As the majority acknowledges, this Court has on numerous occasions held that evidence of the details of a crime for which a conviction has been obtained is not admissible during the impeachment process. It also acknowledges that this view prevails in the large majority of jurisdictions. Nonetheless, it approves the inquiry about a rape which took place during the perpetration of the armed robbery for which this alibi witness was convicted because the rule that would mandate exclusion of this information "developed from a misapplication of the rules concerning all past misconduct evidence."
Regardless of whether the majority is correct in concluding that the exclusion rule developed through mistake, I believe that the fact that it is included in statutory law of this State (La.R.S. 15:495) prevents this Court from simply writing that law out of existence. La.R.S. 15:495 specifically prohibits questioning on cross-examination of a witness as to indictments or arrests; if these matters cannot be used for impeachment, surely there can be no inquiry about details of a crime which include an act not the basis of a conviction or an indictment or arrest.
In my opinion the permissible bounds of impeachment of this witness were reached when the witness revealed this prior armed robbery conviction. The questions concerning the rape, asked after the witness admitted the armed robbery conviction, were contrary to La.R.S. 15:495 and to the former jurisprudence. I believe they constituted reversible error.
Additionally, I feel compelled to note that the majority's discussion of res gestae in connection with the prior armed robbery-rape is totally irrelevant to the issues. Considerations of the applicability of the res gestae concept are relevant only in situations where there is a question about the admissibility of evidence of events or occurrences which took place during the commission of the offense which forms the basis of the trial itself.
I respectfully dissent.
CALOGERO, Justice (dissenting).
I would adhere to the prior jurisprudence of this Court (State v. Danna, 170 La. 775, 129 So. 154 (1930); State v. Perkins, 248 La. 293, 178 So.2d 255 (1965); State v. Brent, 248 La. 1072, 184 So.2d 14 (1966); see State v. Kelly, 271 So.2d 870 (La.1973)) and hold inadmissible, evidence of the details of crimes used to impeach the credibility of a witness. R.S. 15:495 clearly prohibits such evidence, and I see no reason to rewrite the statute.