CIACCIO, Judge.
Walter Washington was charged with and convicted of being a convicted felon in possession of a firearm. La.R.S. 14:95.1. He was sentenced to serve seven years at hard labor, without benefit of parole, probation or suspension of sentence. He was also fined $1,000 and, in lieu of payment thereof, was ordered to serve an additional day in jail. This sentence was to run consecutively with those imposed for his convictions on charges of simple burglary of *288 an inhabited dwelling (Doc. No. 88K 0744) and aggravated assault (Doc. No. 88 K 0746). Defendant relies upon two assignments of error in appealing his conviction and sentence. We affirm.
On April 9, 1986 the residence of Thomas Sims Hughes, located at 336 Walnut Street in New Orleans, was burglarized. During the time immediately preceding the burglary, a neighbor in the building, Brian Frilot, heard the sound of breaking glass and went to the front of the residence to see what was transpiring. As he walked out of his front door and called to Hughes, Frilot was told by the defendant to get back inside. Frilot stated, at trial, that when the defendant ordered him to return to his residence, the defendant raised his right hand up; he had a gun in it. Frilot returned to his residence and summoned the police. Frilot armed himself with a shotgun and went downstairs. He thereafter alerted Hughes and his female companion, Ms. Julie Burg, of the burglary. The pair later discovered a set of door keys, Mr. Hughes’ briefcase and Ms. Burg’s purse and its contents missing from the apartment.
The police arrived on the scene and they interviewed Dr. Richard Brunswick, a resident of a nearby house who had seen the defendant as he fled the crime scene. Dr. Brunswick instructed the officers regarding the path taken by the suspect.
Accompanied by Brian Frilot the policemen followed the path and found discarded stolen property along the way. Once they reached Millaudon Street, Frilot spotted the defendant and so advised the policemen who were with him. As the police approached the defendant he started to pull a steel revolver from his waist. The police were able to subdue the defendant. At this location the officers found a blue steel revolver lying on top of the victim’s purse next to a parked car.
A follow-up investigation of the Walnut Street residence revealed a spent bullet which was retrieved from the wall.
At the trial of this matter Brian Frilot testified that during the April 9, 1986 burglary the defendant had in his possession a short barrel revolver which defendant used to shoot at Frilot. He also testified that he saw a gun in the defendant’s waistband at the time the police approached him for the purpose of arresting him.
Officer Bruce Harrison testified regarding the events of their investigation and apprehension of the defendant. He stated that the defendant drew a handgun from his waistband at the time they approached him to place him under arrest. The gun was later retrieved from the ground near a parked car.
Ms. Burg testified that she was a victim in the burglary of April 9th and that at this time she never saw the gun, which was admitted into evidence, in the Walnut Street apartment.
The defendant denied having a gun in his possession on the day of this incident. His mother, Ellen Carriere, testified that there was no gun at the scene of her son’s arrest.
Troy Taylor who alleged that he played basketball with the defendant on the day in question stated that he did not see a gun in the defendant’s belt shortly before his arrest.
A fingerprint expert, Officer William Sa-bel, testified that an arrest card for the defendant indicated that he had been arrested on July 4, 1983 for the residence burglary of 828 Broadway Street in New Orleans. Officer Sabel stated that the fingerprints on the arrest card matched those taken of the defendant in court on the day of trial.

Assignment No. 1

The defendant argues by this assignment of error that the 'trial court erred in allowing the defendant’s cross-examination concerning certain details of his burglary conviction.
In this regard the defendant concedes that there exists a legitimate reason for the introduction of the facts of the burglary. He argues, however, that the details elicited were unduly prejudicial in that they “hammered home that the defendant had been charged with the burglary of 332 Walnut Street, and had already been on trial on that charge after proclaiming his innocence.”
*289 The impeachment evidence which defendant finds objectionable is the following testimony elicited from the defendant during his trial.
By Ms. Weisler:
Q. Mr. Washington, beside the conviction you told your attorney you had, you also have another one; is that correct?
A. Yes.
Q. And what is that conviction for?
A. Burglary.
Q. Of an inhabited dwelling?
A. I don’t know.
Q. Where someone lived?
A. I don’t know that house.
Q. And that was supposedly the same night as this?
A. I’m told that, but the — that’s what the police said, yes.
Q. And that’s where this came from?
A. I don’t know.
Q. Referring to State’s Exhibit 7, that’s where those items came from.
A. Okay.
Q. And a jury of 12 people heard that case?
A. Yes.
Q. And they found you guilty?
A. For what?
Q. For burglarizing the house where all of these items were taken that were found on you?
A. That’s not true. That’s not mine.
[Tr 118-119]
Evidence of conviction of a crime is admissible for purposes of impeaching the credibility of a witness. La.R.S. 15:495.
In State v. Brown, 371 So.2d 746, 750 (La.1979) the Louisiana Supreme Court discussed the nature of the cross-examination concerning details of prior convictions:
In State v. Jackson, 307 So.2d 604 (La.1975), this Court reversed the prior jurisprudence and held that the prosecution, in impeaching the credibility of a defense witness, may not only establish prior convictions of the witness, but may also cross-examine the witness about the details of the prior convictions in order to show the “true nature” of the offenses.
The Jackson holding has since been extended to defendants testifying in their own behalf. State v. Sykes, 364 So.2d 1293 (La.1978); State v. Thompson, 364 So.2d 908 (La.1978); State v. Carter, 363 So.2d 893 (La.1978); State v. Dupar, 353 So.2d 272 (La.1977); State v. Elzie, 351 So.2d 1174 (La.1977); State v. Jackson, 339 So.2d 730 (La.1976); State v. Williams, 339 So.2d 728 (La.1976); State v. Elam, 312 So.2d 318 (La.1975); State v. Jackson, 307 So.2d 604 (La.1975).
While reaffirming the principles set forth in Jackson, supra, and its progeny, we are, nevertheless, aware that a Jackson cross-examination is not without its limits. The extent to which the inquiry into past convictions can be permitted is dependent upon the facts of the particular case. The trial judge has great discretion in determining the depth and length of the inquiry. This discretion will not be disturbed absent a showing of abuse.
In this case the state merely elicited the identity of the crime for which the defendant was convicted and the fact that a jury found him guilty. We are satisfied that under Jackson, supra the nature of the offense, (i.e. a burglary of an inhabited dwelling) is admissible. Furthermore, since a jury (or judge) must necessarily find a defendant guilty in order for him to be convicted, we fail to see that this issue is irrelevant or prejudicial.
The trial judge did not abuse his discretion in admitting these details of the defendant’s conviction into evidence.
This assignment lacks merit.

Assignment of Error No. 2

In this assignment of error the defendant argues that the imposition of consecutive sentences for charges arising from the same criminal episode was error.
 Louisiana Code of Criminal Procedure Article 883 provides, in pertinent part:
La.C.Cr.P. Art. 883. Concurrent and consecutive sentences
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of *290 imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently....
Although sentences for crimes arising out of a single course of conduct are generally served concurrently, the imposition of consecutive sentences for such crimes is not automatically excessive. State v. Williams, 445 So.2d 1171 (La., 1984); State v. Parker, 503 So.2d 643 (La.App., 4th Cir.1987).
In Parker, supra at 646, this court discussed some factors to be considered in imposing sentences consecutively:
Other factors must be taken into consideration in determining whether sentences should be served consecutively. State v. Ortego, 382 So.2d 921, 923 (La.1980); State v. Ashley, 463 So.2d 794 (La.App. 2nd Cir.1985). Some of those factors include defendant’s criminal history, State v. Ortego, supra; the dangerousness of the offense, State v. Underwood, 353 So.2d 1013 (La.1978); the viciousness of the crimes, State v. Murdock, 416 So.2d 103 (La.1982); the harm done to the victim, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983); the potential for defendant’s rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); and the danger posed by the defendant to the public safety, State v. Carter, 412 So.2d 540 (La.1982).
In imposing consecutive sentences for crimes arising from a single transaction the court must show particular justification beyond a mere articulation of the standard sentencing guidelines set forth in Louisiana Code of Criminal Procedure Article 894.1. State v. Messer, 408 So.2d 1354 (La., 1982).
In this case the defendant was convicted of three crimes arising from the same episode: burglary of an inhabited dwelling (KA 0744); possession of a firearm by a convicted felon (KA 0745); and, aggravated assault (KA 0746). He was sentenced to prison time of eight years, seven years, and six months respectively, with the sentences to run consecutively.
The sentencing transcript reveals that the trial judge, during sentencing, considered the defendant’s prior conviction for simple burglary. He also listed with specificity the aggravating and mitigating circumstances in according with statutory sentencing guidelines. La.C.Cr.P. Art. 894.1. The court, however, failed to articulate the particular justification for imposition of consecutive sentences. Accordingly, we vacate the defendant’s sentence in K 0745 and remand for resentencing, in order that an expressed justification for imposition of consecutive sentences can be articulated by the trial judge if, within his discretion, he again chooses to impose such sentence.
For the reasons assigned the defendant’s conviction is affirmed, the sentence in this case is vacated and the case is remanded to the district court for resentencing in accord with the dictates of this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.